WALKER v. GOOCH et al.

*(Circuit Court, N. D. Illinois. February, 1881.)*

1. SALE—WARRANTY—BRANDS OF MEAT.

A dealer in cured meats in Chicago agreed in writing to furnish a dealer in provisions in Liverpool "75 boxes Kingan's Cumberland Cut bacon," and "50 boxes Thallon's Stafford middles, * * * goods all warranted to be of choicest quality of grade and brand, or sale to be voided, and goods to be sold for account of" the seller. Both of the packers mentioned were putting up brands of meat exclusively for the Liverpool market, which bore their respective names, and other brands, without their names, for the general market. The seller furnished the latter brands. Their quality was equal to that of the others; but those bearing the packers' names had a first-class reputation in the Liverpool market, and always brought a better price there, the others being rated as second-class. Similar contracts were filled by other dealers by furnishing the same meat. *Held,* that there was a breach of the warranty.

2. SAME—EVIDENCE.

The fact that the brands bearing the packers' names were not for sale by brokers generally, but only by their designated agents in Liverpool, was no proof that such brands were not intended by the contract, when it did not appear that the purchaser was aware of that fact.

3. SAME—EFFECT OF RECEIVING GOODS.

Nor is it a defense that the purchaser received the goods after being notified by the bills of lading that other brands were furnished, since the contract gave him authority in such event to receive and sell the goods on the seller's account.

4. SAME—EFFECT OF PAYING DRAFT.

Acceptance and payment by the purchaser of drafts drawn upon him in payment therefor, after he became aware of the breach of contract, were not prejudicial to him.

At Law.

*Edward A. Dicker,* for plaintiff.

*Joseph Wright,* for defendants.

BLODGETT, J. This is an action on a guaranty by defendants on the sale of a quantity of meats to plaintiff. Plaintiff, in November, 1876, was a dealer in provisions in Liverpool, England. Defendants were dealers in cured meats in the city of Chicago; and one R. H. Rose was agent for the defendants in Liverpool. On the 24th of November, Rose, as agent for defendants, by contract in writing, sold to plaintiff "75 boxes Kingan's Cumberland Cut bacon," for shipment from Indianapolis during November, at 42 shillings per cwt., and "50 boxes Thallon's Stafford middles," at 44 shillings per cwt.; "goods all warranted to be of choicest quality of grade and brand, or sale to be voided, and goods

to be sold for account of Gooch & Barber." At the time this sale was made, Kingan & Co. were packers of meats in Indianapolis, Ind., and John Thallon was a packer of meats in Chicago. Kingan & Co. put up for the Liverpool market a brand of bacon marked " Kingan's Packing Co. Cumberland Cut Bacon, Indianapolis, Indiana," which was forwarded exclusively to an agent of Kingan at Liverpool for sale there. It was not in the hands of general brokers here for sale. Kingan also put up another brand of bacon, marked "Taylor's Cumberland Cut Bacon, Indianapolis," which was in the general market, and bought and sold through brokers here and abroad. Thallon put up a brand of "middles" for the Liverpool market, and forwarded them only to his agent at that place, marked "John Thallon's Stafford Middles," and he also put up another brand, marked "Empire Packing-House Stafford Middles," which were also in the general market, like Taylor's bacon. The proof leaves the exact wording of these brands somewhat in doubt, but makes it clear and undisputed that one of the bacon brands bore the name of Kingan, and one of the Thallon brands bore the name of Thallon. The defendants filled this contract by shipping to plaintiff 75 boxes of "bacon" marked with the Taylor brand, instead of the Kingan brand, and 50 boxes "middles" branded with the Empire Packing-House brand, instead of the Thallon brand; but the proof shows that the "bacon" was in fact packed by Kingan & Co., of Indianapolis, and the "middles" were in fact packed by John Thallon, and that the quality of the goods was equal to those bearing the names of Kingan and Thallon. At the time of shipment, defendants drew on plaintiff at 60 days' sight for the purchase price of the goods, less the freight, and the drafts went forward with the bills of lading attached, describing the goods, and defendants also forwarded to plaintiff by mail, at the time of shipment, invoices of the goods, describing them by their brands or marks. Plaintiff accepted and paid the drafts in the due course of business, and on the arrival of the goods paid the freight, and placed them in the hands of a broker to be sold, and brings this suit to recover the difference between the proceeds of the goods and the amount paid for them; plaintiff assuming that under the contract he had the right to sell the goods as the property of the defendants, if they did not answer the guaranty.

The only question in the case is whether defendants had the right to fill their contract with any other brands of meat than those bearing the names of "Kingan" and "Thallon," respectively. The proof shows clearly that the brand of bacon known in the Liverpool market as "Kingan's Bacon," and the brand of middles known as "Thallon's Stafford Middles," "had a first-class reputation, and always brought the top market price," in Liverpool, and that the "Taylor" brand of Kingan's bacon, and "Empire" brand of Thallon's middles, were rated as second-class goods of those packers, and that on the arrival of these goods at Liverpool the "Taylor" brand of bacon was worth in the market 38 to 40 shillings per cwt., and the "Empire" brand of middles was worth in the same market 40 to 42 shillings, while Kingan's bacon, branded with

Kingan's name, was worth from 45 to 46 shillings per cwt., and Thallon's middles, bearing his name in the brand, were worth 48 to 50 shillings per cwt. The contract calls for "the choicest quality of grade and brand," and notwithstanding the proof in this case tending to show that contracts of this kind were filled by other dealers, at about the time this contract was made, by the shipment of "Taylor" and "Empire" brands, I am of the opinion that the true construction of the contract called for the choicest brand of Kingan's bacon and Thallon's middles; and the proof shows that the choicest brands of those packers were those bearing their respective names. The goods forwarded were not of those brands, and there was, therefore, a breach of contract. But it is urged that the goods branded with the individual names of these packers were not for sale by brokers generally, and therefore the parties to the contract must be presumed to have meant the class of goods which were so for sale by brokers. The reply to this is that there is no proof in the case tending to show that the plaintiff knew that only certain agents of Kingan and Thallon were authorized to sell goods bearing their individual names as part of the brand. The books are full of cases showing that parties have been compelled to pay damages for the non-performance of contracts for the sale of property which they did not own or control at the time they pretended to make the sale. So, if the defendants in this case saw fit to enter into a contract to sell goods they could not deliver, their inability to perform their undertaking is no defense; although the proof as to who had the sale of these "choicest brands" has some bearing upon the question as to what was meant by the terms used in the contract. But the proof leaves no doubt in my mind that the true meaning of the terms used requires the contract to be filled with goods bearing the individual Kingan and Thallon brands.

It is also urged in behalf of defendants that plaintiff had notice, by the bills of lading and invoices, of the brands of goods forwarded to him, and that he should at once have refused to receive the goods and pay the drafts if the invoices of the goods shipped show that they were not of the brand called for by the contract. I do not think this was the duty or right of the plaintiff under this contract. The contract provides that, if the goods are not of the brand and grade called for, the sale is "to be voided, and the goods sold for account" of defendants. This, in effect, made the plaintiff the broker of defendants; and it became his duty to sell the goods for defendants' account, and to apply the proceeds to the payment of his advances, as far as they would go. The contract may be said to be self-adjusting, and provided by its own terms for the contingency of the goods not meeting the guaranty,—a very wise and proper provision, considering the circumstances under which such contracts are made, because, but for this provision, if the goods were not such as responded to the terms of the contract, the plaintiff would have had a right to reject them, and they would have been left in a foreign port, perishable, and perhaps ruined, or largely deteriorated, before notice could be given to the owner. It was, therefore, wise to put into the contract a provision that the plaintiff should dispose of the goods as a

broker for the defendants at the best price he could get. If the proceeds were insufficient to pay advances and expenses of sale, then defendants are liable for the balance.

It is not, perhaps, necessary to pass upon the question as to plaintiff's obligation to accept and pay the drafts in case the goods did not answer the contract, although I incline to the opinion that under this contract it was his duty to do so. He certainly had the right to accept and pay defendants' drafts drawn upon him, and on which drafts defendants had obtained the money, upon the faith that they would be so accepted and paid; and his refusal to do so might have worked most serious injury to defendants' credit, by dishonoring their paper in a market where it was of the utmost importance to them to keep their credit good.

I am, therefore, of opinion that plaintiff has made a clear case of right to recover, and should have judgment for the amount due; being the difference between the price paid for the goods under the contract and the net proceeds of the sale. Judgment for plaintiff.